All right, we don't normally attract so many counsel in an insurance coverage case, so we've got plenty of lawyers per square foot in this one and the following. So first up, Ms. Andresi, all right. May it please the Court, Counsel? Yes, ma'am. This case is about the proper construction of the coverage trigger in Terry Black's business interruption policy. The phrase at issue is direct physical loss of or damage to property. State Auto left those words completely undefined in the policy, but now it wants those words construed as narrowly as possible to avoid coverage. In fact, State Auto wants the word loss and the word damage to mean the same thing, tangible alteration to property. This construction violates... Rather than just loss? No, Your Honor. It's a deprivation of physical space. The restriction that the orders placed rendered physical space, the dining room at Terry Black's Barbecue's restaurants, the dining areas were physically, those physical spaces were rendered unavailable for use as their, for their intended purpose. For use. If that's, that's not just a mere... I mean, the restaurant didn't blow up. It didn't, your folks didn't get evicted. And they continue to do drive-through and pick up and delivery and so forth? They did, but... The restaurant itself functioned, albeit dramatically different, but it, it didn't, you know, like shut down, you know, no occupancy, nobody there, no service, and it's, you know, years later and all this stuff where the building deteriorated or some other physical manifestation in the structure as a result of that, but employees came, food was prepared, people just had to pick up and deliver and so forth. Does that alter at all the notion of quote physical? Well, that's, that would be physical damage to the property, but this policy separates loss from damage. It says loss of or damage to property. And the, the property includes the physical spaces in the dining room as a physical space. And that was rendered literally unavailable for use for dine-in service. Well, is it more like a business interruption? Well, it definitely, well, it completely triggers the business interruption. I mean, they're business interruption policies and clauses, right? They're different from, you know, the coverage here. I mean, even here, if you say business interruption, I mean, it's, it wasn't shut down, but that's different, but help us with getting to the physical. Right. Well, if, if the property had been completely shut down, and I think the district court suggested and I think it's correct that that would be a physical loss of property under the business interruption trigger. And in that scenario, there's no, the building's still there. There's no physical alteration to the tangible alteration to the building itself. It's still there, but all of its interior spaces are completely unavailable for their intended purpose, all of them. So that's 100% of a loss of the property. Whereas here we have, there's no reason to not be able to have a partial loss of the property. And here we have the physical space of the dining room. That's a physical space. And there's a complete loss of its availability, its availability for use, for dine-in service. That, the result of that is a loss of use, and that's what business interruption coverage is intended to cover, but the physicality aspect of it is there. That is a physical space, and the fact that it can be used for something else doesn't change the fact that the insured still has lost the availability, the literal availability of a physical space, the dining room. That meets a, that's a reasonable interpretation of loss of property, and that's all under Texas rules of contract construction. If the insured offers a reasonable construction, the court must adopt that construction. One of the, the flaw, I think, in the district court and in Stato's position is that they are ignoring the or in the sentence, in the physical, in the coverage trigger. Well, y'all are ignoring direct physical. The space is physical, and it's, the dining room is a physical space. Yeah, but y'all didn't lose it. It's still there. It's yours. The state didn't come and take your restaurant so that they could build a highway there instead. It didn't get destroyed by a hurricane or a tornado or whatnot. It's still there. So I, I, you are arguing, aren't you, the loss of use. So you're adding of use to the word loss. When the physical space is literally rendered unavailable, it's, the loss of use flows from the lack of availability. The order came down at that moment. But weren't your clients using it? They. That doesn't, yes, they were for, I didn't take out service. So even under loss of use, they were, they were just not using it as fulsomely as they wanted to.  And that's under the normal meeting, that's a. What if the, as they currently in Texas do, they haven't shut down restaurants and all of that, but people might be afraid when we have surge and all of that to go. And so maybe nobody's showing up. Is that a loss? That's a loss of market that is completely untethered to the loss of availability of the physical space to be used at for dine in service. That's that's a, that's a loss of market that's, that's not covered. But the loss of use here, if the kitchen staff decided to go on strike, didn't show up, so we couldn't do dine in service that evening, that's a loss of use. But if the dining room is literally, the physical space is unavailable to do dine in service, it's unavailable. The loss of use flows from that. And that is what business interruption coverage is intended to, that's, that's what that insurance is for, is, is a loss of use, not a pure loss of use, it has to be tethered to a loss of property, a physical loss of property, but again, the dining room is a space and the fact that you can use it for something else does not lessen or take away that. So, you're writing the key paragraph of our opinion, and someday some other issue could come up, you know, I understand that the COVID issues would be addressed by this, but we could have something in the future. What does your paragraph say about what this means? It doesn't mean people just stop coming to the restaurant because they're afraid, but it does mean if the government shuts it down, or I mean, walk me through your paragraph. A restriction from some source, a restriction that renders the physical space unavailable for a particular use, that is a loss, that's a loss, the word is not restrictive, and that's a physical space. I mean, it's not available anymore. I guess my problem is I'm looking at the phrase direct physical loss of property, and I can't take that phrase and get to where you are, you're saying the loss of physical space. Property. That's what you're saying that means, the loss of physical space, which I guess suggests there's some space that's not physical. Well, I think that a physical space, the dining room in a restaurant, is property within the meaning of the policy. What would be the opposite of physical space? I'm not sure I understand that, I'm not sure. Well, because that's not, that's not what these words say. These words say direct physical loss of property, it doesn't say anything about some physical space. Okay, I didn't understand. But you're translating into physical space, which suggests to me that there's something that's not physical space. But physical space, according to you, is covered under the policy. The non-physical spaces are not. What's not physical space? The property is covered under the policy. That's property. I'm using the word physical space, the dining room, as part of the property. It covers, you know, the coverage is for the building. But you understand looking at this policy is like interpreting a contract, so we're looking at the words of the policy. It says direct physical loss, it doesn't say anything about physical space. Direct physical loss of property. But the dining room is the property, and there's a physical loss of it. So if the property burned, that'd be a direct physical loss of property. That would be. Would that be covered? That would be a damage to the. That would be damage. I think you could also call that loss. But the physical. Do you disagree with their definition of damage versus loss? They're saying damage is, you know, maybe there was a tornado that broke the window and some part of the restaurant couldn't be used for a while, versus a bomb that landed on top of the restaurant and totally destroyed it to where it is completely lost. Do you not see, you don't agree with that definition? Well, I think that if you have a complete destruction, the building burns to the ground, that's definitely, that's a loss, of course it's a loss. You could call that complete destruction. To require tangible alteration of the property for both loss and damage, that you end up meaning the same thing, and that ignores the word or. Loss of must mean something. There must be some element of coverage. But their argument is loss is the whole thing's gone, damage is part of it is affected, but it's still there. Right. That's their definition. And yours is. That they have to mean something different. And complete destruction can also be called a loss. It's a complete loss. I mean, it's a complete loss. So they're saying they mean the same thing. And let me understand your view of, so there was a period of time that they reopened restaurants, but you could only let in 25 percent or 50 percent or 75 percent, all of that is still a loss? It has to be 100 percent of the restaurant has to be allowed to be used? That just goes to the magnitude of the loss. That just goes to the magnitude of the loss, the amount of business income. But that would still be a loss? That would be a loss. They said you have to, you know, set it up so that people can be six feet apart and so on and so forth. So they weren't able to have as many people as they used to in the mosh pit or whatever. The property is still unavailable for its intended purpose. It's literally unavailable for full use, which is what the insured had prior to the orders coming down. It could fully use it for dining service, it could fully use it for 100 percent capacity. Any variation in any of that, any manipulation of the orders, just goes to the magnitude of the loss. So if the government said you can open it for 75 percent of its available space or whatever, but you all were losing 90 percent of what you normally had made, what would you be able to recover on that? I think that would be a fact issue. Yeah, okay. What would be your argument? I'm your juror. What would you ask me? If you're losing 90 percent because... Even though you could reopen to 75 percent. So if normally 100 people could fit in the restaurant, 75 can now come in. But only 10 are coming in every day. Tell me about that. If you're open, if the premises are 100 percent available... No, I'm talking about the 75... Or 75 percent available, then I think that there's got to be some type of... Again, that's just going to be a fact issue about whether the number of people that are coming in, if that has to do with the unavailability of 75 percent of the premises, or that you To me, that's just... What part of the business income loss is tethered to the unavailability of the premises to whatever degree that is? And that's going to be your measure of damages, and that would be a fact issue. You would have to sort through that, and if you only have 10 people coming in, I don't know, maybe you can't prove that your business income loss is tethered to the unavailability of full occupancy. But that's a fact issue, I think. All right. Thank you. You've reserved your rebuttal time. We'll see you when you come back up. All right. We have an amicus. Mr. Gillette. Thank you. May it please the Court. My name is Gabriel Gillette. I'm from Jenner & Block, representing the Amici, the Restaurant Law Center, and the Texas Restaurant Association. I want to make just two quick points today, and I think one responds to the Court's questions, and that is that you have to start from the recognition that the insured property here is a fully functional restaurant. This isn't sort of an off-the-rack policy that says we insure business X and you leave X alone. When the insurer calculates the premiums for these policies, it's based on multiple factors. One of them is available square footage. One of them is how the square footage is going to be used. One of them is the expected revenue. And so that's why, if you've got 1,000 square feet for a McDonald's and you've got 1,000 square feet for a three-Michelin-star fancy restaurant, the insurance premium is different and the coverage is different, and that is because the policy is covering the space as it's intended to be used, as it's fully functional. So, Judge Stewart, you said the property functions, albeit it functions dramatically differently. We agree, and I think that's why this is covered loss, because what the insurers were insuring, what the policyholder was getting insurance for, was the restaurant that everybody agreed was going to be brought into the world. They weren't insuring an empty space to be turned into something else. Now, Judge Haynes, you mentioned the state didn't take the property. It wasn't totally destroyed. It wasn't there. But I'd point you to Judge Stewart's question. It was there, but it was a shell of itself. It was not fully functional in a way that if you had 100 seats and the whole policy is premised on serving 100 seats. I mean, you could end up with more money if instead of people having to come and order and sit around eating slowly and yapping and whatever, they're just driving through and picking up food right and left. You could conceivably make more money. You could, and I think that would be an issue for damages, just like Your Honor's question about if the restriction takes out 25% of the seats, but you lose 90% of your revenue. I think you're on to something that it's perhaps not so feasible to say I get coverage for 90% of my revenue loss when it's not tied to the physical loss or damage. They have to be tied together. And I think the other point I want to leave the Court with is to really focus on the policy interpretation principles here. They're well established. I think the key ones for you to remember, undefined terms like physical loss or damage are given their plain and ordinary meaning. Maybe you use a dictionary for that, but it's not about the gloss that lawyers or judges or treatises want to add to that language. But the National Union versus CBI made very clear that doesn't mean that the insurance company loses every case where the words aren't defined. The Supreme Court was very clear on that. Where you can read the term and that ends up the insurance company wins, that's okay. That's what that case holds. You're right, Your Honor, and I think that gets me to the last principle I think you should keep in mind, and that is that if there is more than one reasonable interpretation of the policy, a claim is stated and it's for a jury to decide whose is right. All the Court needs to find is that the policyholder has a reasonable interpretation. The insurer might have one, too. The insurers might even be better. It's actually not up to the jury. If there's two reasonable interpretations, you have to go with the insurer. For purposes of stating the claim, but ultimately, this is the meaning of the policy. What does physical loss or damage mean and has the plaintiff satisfied it? That's a jury question. Direct physical loss of property is not an esoteric term. It's an undefined term, and I think- But it's not, you know, it's not esoteric. I mean, it's not some amorphous set of language that one applying it can't, you know, sort of connote what it may mean, et cetera, et cetera. There are other Texas cases from the Texas Supreme Court that talk about physical and so on and so forth and all that, and not talk about it in a business interruption. So I've listened to you carefully, and I haven't heard you say anything about those words. I get it, but at any event, that's a reckoning point is the language that we're dealing with. We're charged with viewing the language in the policy and construing it reasonably and so forth. If I may, Your Honor, I think for restaurants in particular, I can give you some examples of what that physicality is, okay? It's barriers across the property. It's blocked access to the property. It's fixtures removed from the property.  I had a kitchen that was so big, and now I can't put my cook next to my cook next to my cook because they have to be six feet spaced apart. Those are the physical dimensions of the property that on March 10th, they weren't an issue. On March 20th in most places, they were an issue. They were physical changes that you can see and touch and feel and recognize the difference. You're saying that, but the size of the kitchen didn't change. The size of the functional space of the kitchen did. So there are, I mean, we have members who had to pull somebody out. When you have to pull an oven out of the kitchen in order to properly space the two other cooks in there, that's physical. The same way that if you have. You don't have to pull the oven out. You just can't have two people next to each other at those two ovens. You don't have to pull it out. You can't operate the business that way. It would be the equivalent of telling Judge Stewart, in order for you, Judge Graves, you, Judge Haynes, to sit properly spaced. Judge Stewart can't be there. Now, whether his chair is sitting there, I guess maybe that's not a big difference. But the point is that. Well, the way it works around here, they just tell us we couldn't be here. Yeah, I was going to say. I guess he gets to decide, doesn't he? He's the senior judge. You bet. We'd have to sit over there someplace. But I think that's your example, is he would. We'll go sit on the roof. He would be physically absent from the space, whether him in his person or his chair. There would be something that is physically, visibly different about this setup. And you wouldn't say, no, Judge Stewart's here because we didn't forcibly, you know, because he could be here, I guess. It would just be violating the law. It would look, this panel would look very different. And the panel would function differently if it was missing a third of its members. Not to make too fine a point, and this isn't a question begging an answer, but we literally sat in the in-bank courtroom where there's 17 chairs, but we put three judges there. We just put lots of space between the three that were in there. But we were still in the courtroom, but with plenty of space between. Anyway, that wasn't a question. It just, because the tape has me on it, I thought I would . . . He just didn't want to be out of his chair. But no, we appreciate your briefing and the . . . I mean, it's not lost on us at all, all the surrounding circumstances about the case and COVID's impact and so on and so forth. Just, you know, we're charged with construing the policy, and that's why we set this case for a large minute to get help from you and others on it and in the case following, you know, so we can drill down and do our best to get it. So, thank you for briefing and for being a part of the oral argument. Thank you. All right.  State insurance, Mr. Fletcher. And my days on the state trial court, this would have been a whole afternoon argument. All right, sir. Good morning. May it please the court. Adam Fletcher on behalf of Appley State Auto Mutual Insurance Company. Not to be confused with Great Rates for Everybody and Jake and State Farm, right? That's right, Your Honor. Different company. No exotic commercials from state insurance. None yet. We'll see. I still have 16 and a half minutes, so you never know. Go for it. Your Honors, I'd like to start by drawing your attention to a part of the policy and policy language that is really integral to this court's understanding and that hasn't been mentioned yet today. And that part of the language is the period of restoration language you could find in the record at page 232. And the reason that that's so important is because the policy tells you what type of direct physical loss is expected to be covered by the policy. It gives you the test. And what it says is that the policy will cover direct physical loss of property until such time that it can be repaired, replaced, rebuilt, and then it goes on. In a reasonable period of time. And then the key is back to similar quality as before. The policy tells you that. Thierry Blacks has a set of issues. They would argue that happened when the governor rescinded all those orders and banned the counties from passing their own orders such that restaurants essentially reopened. Whether or not people went to them, they reopened. Fully. They would argue that, Your Honor. Okay, so what's your response to that? They have. It's an unreasonable interpretation. It's not within the plain meaning of the policy. If the dishes were in a certain condition, if they were in a certain quality before the government issued the order, you saw the dishes and their inequality, and then the government issues an order and says, I'd like to constrain the way you are operating. The dishes are of the same quality. They haven't changed quality. And then the government says, okay, now you can start operating in this certain way again. And the dishes are still in the same quality. That's the test of the policy. If there's nothing that needed to be repaired, rebuilt, replaced, back to the same quality as before, that is not a direct physical loss of property under the business income coverage. That's the plain meaning. So what's your response to the argument that we have to, because of the word or, we have to treat loss and damage differently. And when we treat loss as just a bigger damage, we're not treating them differently enough. That's kind of the argument I think she made. It is, Your Honor. And I have a few points on that. First of all, I think in reality, we know from Texas law, that the way loss and damage works is really akin to a Venn diagram. The De Laurentiis case had the phrase physical loss. And the court said, well, what's physical loss under Texas law? And the court looked in a dictionary and said, loss really has no hard and fast meaning. In fact, it is oftentimes synonymous with the term damage. And then the court went on to say, we think a physical loss requires tangible loss or tangible damage. So if you bring that idea to this case, what we have really is this concept of Venn diagram. In the direct physical loss circle, you absolutely have a different meaning where something is gone. You walk in and you say, the podium used to be here. It's now not here. That's a direct physical loss of the podium. There was a physical act that came upon the podium, and it's gone. No one would say that it's damaged. It's gone. That's a direct physical loss. If you come in and say, oh my gosh, the framing on the podium is hanging, it's damaged. That's the other circle. That's clearly direct physical damage. In the middle of the two, you have what De Laurentiis has recognized. You could come in and say, this podium is so damaged that it's now a loss. In fact, I think one of the questions was, what happens if it burns down? Terry Black's. And the answer was, well, then you have damage. Well, that could also be a loss. That's true. That's the middle of the Venn diagram. So, you know, there is a case in Texas called GTE MobileNet at 955 Southwest 2nd, 286, which says there's no rule of construction prohibiting two provisions from having similar meaning. So, yes, we could have a situation where loss means something totally different than damage. We could have a situation where sometimes they're the same. Judge Wisdom had the phrase direct physical loss or damage in front of him in Trinity. And he didn't say, oh my gosh, I don't know what it means there's this word or. He issued a plain meaning ruling that said, that means that the property was in a satisfactory state and then it changed to an unsatisfactory state. That's the plain meaning. The Texas Appellate Court had the same phrase with the disjunctive or. Physical loss or damage in North American Shipbuilding. Nobody in that case said, oh my gosh, what do we do? He said, we need to build a highway and this restaurant's in our way, so we're just, we're taking the whole property. Is that a loss? Not under the business income part of the property. Again, the test needs to be, is there something, is there a direct physical loss of property that is in need of being repaired, replaced, or restored in a reasonable time back to the similar quality it was in before? It's a loss if they move to a totally new place. So why wouldn't it be if the government came in and swooped in and took the restaurant away? Why isn't that a loss? Can't use it anymore. It's certainly a loss. There's no dispute that it's a loss. Is it suspension of operations that was caused by a direct physical loss of the property? The answer is no. In that case, the suspension of operations was caused by the government saying you can no longer operate. The fact that they then, by happenstance, had to move somewhere else and had to buy new carpeting and new this and new furniture is true, but the cause of their suspended operations in your hypothetical was not a direct physical loss of property that needed to be repaired, restored, or replaced back to its quality. That's what this policy covers. So you're saying the government can never cause it. It's always got to be some natural cause, you know, a hurricane, a tornado, a fire, a bomb, or whatever. Yes, Your Honor, I do think that's the truth. And I think that, you know, there's actually. Well, you're the insurance company, though. You could have laid that out a little more clearly. And I bet you are going forward. It's always very interesting after these kinds of situations how everybody runs around all these insurance companies and start updating their policies. But that is why there's this rule about when there's two reasonable interpretations we go with. It's essentially a mass contraprofarentum sort of rule. Because you all have the ability to think through all this in a way that those of us who are just driving a car, well, we don't have any idea. We just get our insurance. So why didn't you all spell that out a little more? Your Honor, respectfully, I'm not sure where or how it could be spelled out more. The phrase direct physical loss, the De Laurentiis case, looks at the word direct and says it means proximate. No one says, oh, I wish you had done it better. Why do you even need the word loss if you're only covering damages? Because sometimes. Why isn't a fire that destroys the whole restaurant a damage? I think, Your Honor, this is the middle of the Venn diagram. It can be, but it's also a loss. But if you walk in, and like I said, the podium, the chairs are missing. Nobody would say, oh my gosh, the chairs have been damaged. That's clearly a direct physical loss. This policy responds to both. But how did it, so the problem is I understand how the podium could be missing. Somebody could come in and take it away. But in a restaurant that's burned to the ground, that's, by your definition, a loss, but that was by a damage. So I'm trying to understand how could the restaurant have a loss with no damage? It could have a loss with, again, the test is whether something, there's a physical act upon the property that requires repair, rebuilding, or replacement back to similar quality. So the instance that that can happen, where there is no damage, is where you walk in and it's missing. That's the instance. It's lost. There is a direct physical loss. And that's what the volumes of case law has said. I came in a very big truck and took the restaurant away. A little odd. Yeah. I guess that's the absurd extent you have to go to really to find coverage here. And I think we're in the realm of reasonable interpretations. And these words, your honors, are not new to this case. These questions are not new to this case. The Texas Supreme Court looked at the word physical and addressed some of the questions that I've been facing here today. The Texas Supreme Court in US Metals specifically said property whose function is diminished can be said to be injured. There's no doubt. But then the Supreme Court said, you've got to give meaning to the word physical. That's not a physical injury. To have a physical injury, you have to have something tangible happen to it. Let me ask you, why shouldn't we certify the question to the Texas Supreme Court? You know, I would say, at least in my days when I was a lawyer, it seemed like half of the Texas Supreme Court decisions on insurance were Fifth Circuit certifications. So why not? This is a big deal. Why not? Your honor, this is a big deal because it arises in the context of one of the worst pandemics this country has ever faced, both for insurers, for businesses, and everybody in between. That's undeniable. But it's not a big deal in terms of how you interpret the words direct, physical, or loss. The courts of Texas have spoken loudly and repeatedly to this issue. There's nothing new. The Texas Supreme Court says physical means tangible. That's not this case. Terry Blacks is arguing that they were prohibited from functioning because the government issued orders telling them they can't function. There wasn't any tangible change or alteration to their property. The Texas Supreme Court has a footnote where they cite to two cases that are representative of Texas law. North American shipbuilding and Judge Wisdom's opinion in Trinity. The phrase in that case, physical loss of or damage to, was deemed unambiguous, was interpreted by those courts pursuant to the plain meaning. And there's absolutely no reason that this court can't do the same. Most recently, in December of 2020, the Texas appellate courts had a case called Compass Well. The case Compass Well had the phrase physical loss. The court in Compass Well had the ability to look backwards at how Texas courts have dealt with these phrases, physical loss. And Compass Well first discusses US metals. It then discusses North American shipbuilding. It then discusses Trinity. And it gives this court two inescapable views of Texas law. The first thing it says, direct physical loss has been held to occur if the property is an initial satisfactory state that's changed to an unsatisfactory state. That's not even alleged here. So we don't need to go to some other court to say, what's the law on it? We have it. The second thing that Compass Well tells us is an intangible loss that is unaccompanied by a demonstrable physical alteration of the property is not considered a direct physical loss. And the Texas appellate courts tell you that based on the plain meaning of the words, based on the Texas Supreme Court and US metals, based on the Texas appellate court and North American shipbuilding, based on justice wisdom in Trinity, there's not much more to go to any other court to say, how do we interpret these words? There's a plain meaning. There's a body of case law. And all of that is framed by the policy language in this case, which is a direct physical loss is something that requires something active. You have to do something. You have to repair, rebuild, or replace this. The fact that it says in a reasonable period of time expects that somebody is doing some work on the property. And then it has to be back to its similar quality. There's no change in quality. Do you want to address the civil authority issue? Sure, Your Honor. It's a somewhat confusing point that I think some circuits have wrestled with. The idea is that there's a civil authority coverage in the policy that's in the record at page 226. That is not at issue here. That coverage was raised in the lower court. It was ruled upon. And it has not been appealed. And here's the reason why. The civil authority coverage is a separate coverage which provides coverage when there has been physical damage to some premises other than Terry Black's. And that physical damage then prevents Terry Black's from operating. The government comes in and says, there's been an earthquake here. Your neighboring stores have been so damaged that it's not safe. And we therefore want to prohibit access from anybody in the neighborhood. That's a civil authority claim. Terry Black's lost on that issue and looked at it and realized that's really not what we're arguing. So that coverage is not at issue. What is at issue is the business income coverage, which is in the record at page 214. And it's confusing only because the claim here is that the civil authorities prevented use of the property. And that's a direct physical loss. So it has the word civil authority in it. But it's a different coverage than the civil authority coverage, which is not at issue. That clarifies the difference. So I see my time is about up, Your Honors. And in conclusion, I'll just point out that policy expects direct physical loss to be something of changed quality that requires repair back to the previous quality. That's not alleged here. That's not this case. There is no business income coverage. The courts of Texas tell you the phrase direct physical loss or damage to is not confusing. Judge Wisdom wasn't confused. North American Shipbuilding wasn't confused. And that the phrase means a change of the state of the property from something satisfactory to unsatisfactory. There is no change in the state, the physical quality of the property. And for those reasons, Your Honor, the decision of the district court should be affirmed in its entirety. Thank you, sir. Thank you. We have another amicus argument. Ms. Pogain, is that right? We do. Thank you, Your Honor. Laura Pogain, on behalf of the Insurance Council of Texas, the American Property Casualty Insurance Association, and the National Association of Mutual Insurance Companies. The court obviously is well aware that key to this case is the meaning of direct physical loss and direct physical damage in the policy.  As the state of Texas, the state of Texas Sixth Circuit recently put it in the Santos case, direct physical loss or direct physical damage is the north star of commercial property insurance. And that's because protection against tangible physical loss or damage to buildings and their contents is the foundation of commercial property insurance. There's a question from the court about the cause of the direct physical loss or direct physical damage. And the policy actually does have a section that specifically requires a covered cause of loss. And the covered cause of loss must be a direct physical loss that in turn causes direct physical loss of or damage to property. A little circular, though. It seems so, but what the policy is getting at is this notion that it's something physical that affects the property. So it's fire. It could be a man-made physical event, a riot, or a commotion, smashes. Well, their argument is this is a physical shutdown. This isn't just the governor telling everybody I think it's a bad idea to go to restaurants. This is the governor saying, you can't go, or you can only go and drive through. You can't go inside. It's not a shutdown of the restaurant, as has been observed. The restaurants generally continue to operate. And in fact, one of the- If I wanted to go and have my anniversary dinner at the restaurant, I couldn't. I had to go pick it up in the parking lot and take it home. That's absolutely- That's different. And that's their argument, that- It is different. That that's different from the governor just saying, well, y'all, I think it's a bad idea to go to a restaurant, but do what you want. Yes, but it's still fundamentally a regulation about the operation or use of the space. It's not something that physically impacted the space itself. And what Terry Black's Barbecue does is it contorts that requirement of direct fiscal loss or damage to cover intangible business losses that resulted from the government orders restricting its operations. It contends the restriction on indoor dining made its property, and in the words used here and in the briefing, physically unusable. And that's both untrue on its face and a kind of whopping expansion of property insurance with no possible manageable bounds. I say it's untrue on its face because, in fact, that space was usable. And in many cases, restaurants did use dining space for other purposes. They used it to set up an assembly line for takeout orders. They used it because they took a window that oversaw a sidewalk and turned it into a takeout counter. The space was usable. It simply could not be used for a particular purpose. Businesses change up how they use space. They may create a bigger reception area. They may create a seating area for guests who are waiting to be seated. They may do all kinds of things with space within the building. And that is not a physical loss of space or damage. Some of the questions from the court were hypotheticals, and they're great examples. You've got a red light. I'll let you conclude, though. I'm sorry, Your Honor. And I wasn't sure because I think it started red, whether three minutes is always red. I'll let you conclude, Your Honor. It turns red at two. Thank you, thank you, Your Honor. So I was just gonna say some of the hypotheticals. Yellow at two, go ahead. Okay, I see. Some of the hypotheticals illustrate this. And I'll just give one quick example, which is let's assume closing hours. And in fact, many of the orders did have different closing hours. And so if you're a bar and you have to stop serving alcohol at 10 p.m., you cannot use your space for its intended purpose after 10 p.m. That's the argument that's being made by the plaintiffs here. That is not physical injury to or loss of property. And we see that closing hours are changed all the time through government regulations, but it's not creating an insured property loss. There's none in that situation, and there's none here at all. We would submit, Your Honor. All right. Thank you. All right, thank you for your assistance and your argument. All right, we're back to rebuttal. So for the period of restoration point, state auto drafted this policy. They put the word restoration in there. That word has a common and usual meaning, and one is the action of returning something to its former condition. I mean, that's an expansive meaning. They put the word in there. That fits the scenario here. But I mean, if the governor shuts down your restaurant today and then next week goes, ah, I think I'll change my mind. You can reopen. How are you restoring it? Unlocking the door, that's the restore? Well, the condition that that order puts Terry Black's restaurant in is unavailability of its space, of its property to run its business. But how are you restoring it when you simply go from, I mean, let's assume arguendo that they didn't do the drive-through and all of that. They just said, we don't know how to do that. We're just gonna wait. So they lock the door. And then the governor says, ah, you can reopen. They unlock the door. That's the restore? Well, returning it to its former condition. Its condition was full-service restaurant, order comes down, not full-service restaurant, order is lifted, former condition is restored. That is one way of reading that.  using the ordinary meaning of restore. Restoration effort was solely the governor signing a document, not your client doing anything. But his client didn't have to go and even mop up the floor. But it's still restored, but the availability of the restaurant, the space is restored. I mean, the word restore, I think, encompasses that. A reasonable interpretation of the word restore would encompass the getting back. That sounds like reopen more than restore. Well, it's restoring to the former condition. There's a change in condition, I guess, is the real point. There's definitely a change in condition. In the physical condition. Yeah, the space, the property's unavailable. That's a condition. The unavailability of certain rooms, my dining room for use, that's a condition. That's a loss. Just addressing real quick there, they talked a lot about U.S. Metals. That was a CGL policy, construing what physical injury is. The issue in that case was not about physical loss. Trinity and North American, those both had to do with situations where one ship was built and the hull was twisted because of defective workmanship. Well, the facts are different, but we're looking at help with language, right? Right, but I think that what's important is the bottom line in both of those cases is the court held there was no loss if the property is in a defective condition from the start. You've gotta have a condition, then some extrinsic event happens and it changes it, a satisfactory condition changes it into an unsatisfactory condition. In both of those cases, it was defective workmanship. It was unsatisfactory from the beginning. That's not a loss of property. That's what those cases are talking about. In Compass Well, that case was, it was about an alleged overpressure event while Compass was fracking a well. And it was a jury trial, and the whole issue, it was a big expert fight about whether or not there was an overpressure event and what the consequences were, whether there was any metallurgical damage to all the connected equipment such that it had to be scrapped. The jury was charged about, used the language from the policy, accidental loss or damage. The jury said yes. The entirety of that opinion is about the sufficiency of the evidence to support that jury finding. And the court talks about direct physical loss, cites to Trinity and North American, cites to Couch. But it wasn't about whether or not, what losses. That case isn't about that. And that case is up on appeal to the Texas Supreme Court right now, and I'll tell you, I've looked at the briefing, and they're not talking about what losses. It's all about the experts. That's just not what that case is about. Let's see. I will say it sounds to me like they are just writing the word or out of the coverage trigger. Again, they wrote it. It's their policy. But their argument is you're writing the physical piece out of the policy. I mean, both of you are arguing, you know, making your best arguments. That's the question I think Judge Haines asked from the Jump Street. You seem to be reading out. I mean, you're doing what great lawyers do. Right. Well, I just, I guess. But we have an argument. I mean, it's not a simple question. Absolutely, and of course our position is that that word has to have meaning. And I will just say, just, if this court, you know, if there's any doubt about it, this opinion, this case is obviously gonna have far-reaching effect. There's so many cases going through the Texas courts, state and federal, and this really might be an appropriate case to certify to the Texas Supreme Court. Thank you. All right, thank you. All right, that concludes the argument.